**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLORADO**

Civil Action No. 08-cv-1046-WYD

BIG O TIRES, LLC, a Nevada limited liability
company f/k/a/ BIG O TIRES, INC.
a Colorado corporation,

Plaintiff,

v.

JDV, LLC, an Arizona limited liability company
and VICTOR VASQUEZ and ELVIA VASQUEZ

Defendants.

## ORDER GRANTING PRELIMINARY INJUNCTION

THIS MATTER is before the Court on Plaintiff's Motion for Preliminary Injunction, filed May 19, 2008 (docket # 2). A hearing on that motion was held on September 17, 2008. For the reasons stated on the record and in this Order, Plaintiff's Motion for Preliminary Injunction is granted.

I. Background

According to the allegations of the Verified Complaint and Demand for Injunctive Relief, Big O Tires, Inc. ("Big O"), a franchisor of retail tire and automotive stores, entered into a franchise agreement (the "Agreement") with JDV to use Big O's US Patent and Trademark registrations (the "Marks") for the ten-year term of the Agreement. The Agreement was guaranteed by defendants, Victor and Elvia Vasquez (the "Guarantors"). On March 25, 2008, JDV and the Guarantors were sent notice that they were in default for failure to pay for product ordered from Big O, for failure to pay royalties, and for failure to contribute to the national advertising fund. By virtue of the

March 25, 2008, letter and Section 19 of the Agreement, JDV was given five days to cure its monetary defaults under the Agreement.

JDV did not cure any of its defaults under the Agreement at anytime and was advised by letters dated April 25 and April 30, 2008, that it must, among other things, cease and desist using the Marks and Trade dress, assign and transfer to Big O its telephone number and customer list, honor its non-compete, pay to Big O all amounts owed and return to Big O all proprietary manuals. JDV, to date, however, has not ceased and desisted from using the Marks and Trade Dress, has not assigned or transferred the telephone number, has not honored its non-compete and has not returned the Manual. In fact, JDV, is continuing to use the Marks, including displaying the Marks throughout the business and allowing employees to wear Big O branded shirts, using Big O point of purchase materials, answering the phone as Big O, and continuing to use Big O invoices. Plaintiff asserts the following claims against Defendants: 1) Infringement Under the Statutory Law of the United States against all Defendants; 2) Unfair Competition Under the Statutory Law of the United States and Under the Common Law against all Defendants; 3) Breach of Contract against JDV; 4) Breach of the Guarantee against the Vasquezes.

Defendants admit that JDV is continuing to use the Marks, including displaying the Marks throughout the business and allowing employees to wear Big O branded shirts, using Big O point of purchase materials, answering the phone as Big O, and continuing to use Big O invoices. However, Defendants assert that Defendant Victor Vasquez began to work with individuals within the Big O system to cure the defects. Defendants assert that on April 25th, Big O wrongfully elected to terminate the franchise

agreement despite the Defendant Victor Vasqez's request for more time to cure the existing default. Defendants assert that the termination was discriminatory in that other franchises in similar circumstances have been given more time to cure without termination of the agreement. On May 28, 2008, Defendant JDV requested through its counsel that it be able to cure the defects and be reinstated from the wrongful termination. Moreover, Defendant JDV asserted that such termination lacked "good cause," was unfair, unjustified, and motivated by other personal or professional reasons in efforts to remove Victor Vasquez from operating the franchise. Defendants assert the following counterclaims against Big O: 1) Breach of Contract; 2) Detrimental Reliance/Misrepresentation; 3) Discrimination of JDV.

    II.    <u>Motion for Preliminary Injunction</u>

"To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *General Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007). "'If the plaintiff can establish that the latter three requirements tip strongly in his favor, the test is modified, and the plaintiff may meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation.'" *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1255-56 (10th Cir. 2003) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)).

### A. Likelihood of Success on the Merits

#### i. Trademark Infringement

Big O asserts that there can be no dispute that Marks are registered and Big O owns the Marks. See Exhibit 1 attached hereto and ¶ 11 of the Verified Complaint. See also 15 U.S.C. 1057(b) (registration is prima facie evidence of the validity of the mark and of the registrant's exclusive right to use the registered mark in commerce). Big O argues that because JDV has continued to use the marks even after the franchise agreement has been terminated they have demonstrated a likelihood of confusion.

Defendants assert that Big O misstates the issue of trademark infringement in its attempts to argue that Defendants should be enjoined from operation of the franchise. Defendants note that Plaintiff argues that it will succeed on the merits due to the fact that Big O Tires is the registered owners of the trademark. However, Defendant JDV entered into a legal agreement for the right to use the trademark. Defendants assert that Plaintiff wrongfully and prematurely terminated the franchise agreement because of allegations of failure to pay royalties and that the Defendants had not infringed the trademark. Defendants seek to "rightfully" continue operation of the franchise upon curing of the defects. Defendants assert that if Plaintiff were to cease its wrongful termination and reinstate the franchise there would be no issues of allegations of trademark infringement. However, this begs the question.

In order to prove trademark infringement, the plaintiff must show (i) that the trademark is valid and (ii) has been infringed. *Drexel Enterprises, Inc. v. Richardson*, 312 F.2d 525 (10th Cir. 1962); *USA Network v. Gannett Co.*, 584 F. Supp. 195 (D. Colo. 1984). Infringement of a trademark occurs when the infringer's use of a trademark "is

4

likely to cause confusion in the marketplace concerning the source of the different products." *Coherent, Inc. v. Coherent Technologies, Inc.*, 736 F. Supp. 1055, 1063 (D. Colo. 1990) (citing *Beer Nuts, Inc. v. Clover Clubs Food Co.*, 805 F.2d 920, 924 (10th Cir. 1986) ( *Beer Nuts II*").  The elements of trade dress claim under 15 U.S.C. 1125(a)(1)(A) are 1)that the trade dress, whether a single feature or a combination of features, is non-functional; 2) that the trade dress has acquired a secondary meaning; and 3) that there is a likelihood of confusion among consumers as to the source of competing products.  Studio 1712, Inc. v. Etna Products Co. Inc., 777 F. Supp. 844 (D. Colo. 1991).

As to likelihood of confusion, it is "well settled doctrine that a terminated franchisee's continued use of its former franchisor's trademarks, by its very nature, constitutes trademark infringement." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1002 (S.D. Fla. 1992).  See also *Merry Maids L.P. v. Karara*, 33 F. Supp.2d 443, 444 and 446 (D. Md. 1998)("many courts have held that continued trademark use by one whose trademark license has been canceled satisfies the likelihood of confusion test and constitutes trademark infringement").  Even where the marks are incontestable and thus valid, the plaintiff still has to show that there was a likelihood of confusion in the marketplace with defendants' products.  See *Universal Money*, 22 F.3d at 1530.  The Tenth Circuit outlines several factors to be considered in determining whether there is a likelihood of confusion: (i) the degree of similarity between the marks, including the mark's appearance, pronunciation, suggestion, and manner of display; (ii) strength or weakness of the plaintiff's mark; (iii) the intent of the alleged infringer in adopting its mark; (iv) similarities and differences of the parties' goods, services, and marketing

strategies (also stated as the relation in use and the manner of marketing between the goods and services marketed by the competing parties); (v) the degree of care likely to be exercised by purchasers of the goods or services involved; and; (vi) evidence of actual confusion, if any.  *Heartsprings*, 143 F.3d at 554; *King of the Mountain*, 185 F.3d at 1089-90 (10th Cir. 1999).  This list is not exhaustive.

I find that Big O has shown a substantial likelihood of success on the merits as to its trademark infringement claim under 15 U.S.C. § 1114(1).  Further, I find that Plaintiff has demonstrated a likelihood of success on the merits because the Defendants or the terminated franchisee's continued use of its former franchisor's trademarks, by its very nature, appears to constitute trademark infringement.  It is apparent from the record before me that Plaintiff has shown a strong likelihood of confusion in the marketplace, as Defendants are continuing to operate, for all intensive purposes, as a franchisee in good standing with Big O.

    ii.  Covenant Not to Compete

Big O argues that a two-year covenant within a ten-mile radius of the previous location is not unreasonable and the Defendants, who are operating at their former franchised location have no basis to challenge either the scope or duration of the restrictive covenant. The pertinent Colorado statute is C.R.S. § 8-2-113, which states that

> "[a]ny covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void, but this subsection does not apply to:  (a) any contract for the purchase and sale of a business or the assets of a business; (b) any contract for the protection of trade secrets; (c) any contractual provision providing for recovery of the expense of educating and training an employee who has served an employer for a period of less

than two years; (d) executive and management personnel and officers and employees who constitute professional staff to executive and management personnel."

*Id.*, § 8-2-113(2). A franchise is analogous to the sale of business and, therefore, is exempt from the prohibition in 8-2-113(2)(a). *See I Can't Believe It's Yogurt v. Gunn*, 1997 WL 599391.

There is a rule of reasonableness as to both duration and geographic scope of the covenant. *See Nat'l Graphics Co. v. Dilley*, 681 P.2d 546 (Colo. App. 1984); *Boulder Med. Center v. Moore*, 651 P.2d 464 (Colo. App. 1984). Covenants not to compete that are one year or even longer have been approved by the Colorado courts. *Mgmt. Recruiters of Boulder, Inc. v. Miller*, 762 P.2d 763, 766 (Colo. App. 1988) (one-year noncompete clause); *In Re Marriage of Fischer*, 834 P.2d 270, 2783 (three-year noncompete clause); *Harrison v. Albright*, 577 P.2d 307 (1978) (five-year noncompete clause). This reasonableness standard also applies to a trade secret covenant, i.e., test for determining whether a covenant fits within the "trade secrets" exception is: (i) is the restrictive covenant justified at all in light of the facts; and (ii) are the specific terms reasonable. *Mgmt. Recruiters of Boulder v. Miller*, 762 P.2d 763 (Colo. App. 1988). Moreover, a trade secret provision in an employment agreement does not validate an unrelated restrictive covenant whose sole purpose is to prohibit all competition. *Colorado Accounting Machs., Inc. v. Merganthaler*, 609 P.2d 1125 (Colo. App. 1980); *Dresser Industries, Inc. v. Sandvick*, 732 F.2d 783 (10th Cir. 1984).

I find that Big O has demonstrated a likelihood of success on the merits as to the covenant not to compete. I agree that a two-year covenant not to compete within a ten-mile radius of the previous location is not unreasonable and that Plaintiff has

7

demonstrated a likelihood of success on the merits as to the enforcement of the covenant not to compete.

### iii. Telephone and Customer Lists

I find that Plaintiff has demonstrated a likelihood of success on the merits as to the return of the telephone number and customer list. Section 20.01 (e) of the Agreement requires JDV to "transfer and assign to Big O or its designee all telephone numbers." Despite the demand for this information, Defendant JDV has refused to assign its telephone number, nor has Defendant JDV provided to Big O its customer list as required by Section 20.01(h) of the Agreement.

Courts routinely order franchisees to assign telephone numbers to franchisors upon termination of the franchise agreement. *See e.g. Gold v. Holiday Rent-A-Car Int'l, Inc.*, 627 F. Supp. 280, 285 (W.D. Mo. 1985) (issuing preliminary injunction to enforce post-termination obligation in franchise agreement to transfer franchisee's telephone numbers to franchisor.) As such, I find that Big O is likely to succeed on the merits of its breach of contract claim relating to the customer lists and telephone number.

### B. Irreparable Harm

Big O argues that it relies upon standardization and strict quality control as a key element to its franchise system. Big O asserts that it should not have to risk placing its reputation and livelihood in the hands of Defendants pending trial when the Defendants are no longer part of the Big O system. I note that the parties stipulated in Article 27.01 of the Agreement to injunctive relief without bond for post termination violations of the Agreement. Big O argues that tire customers in Phoenix, Arizona, using the telephone book will call JDV and not any new franchisee of Big O. Moreover, re-franchising is

delayed by JDV's refusal to sign over the telephone number and customer lists.

Defendants assert that Plaintiff will not suffer any irreparable harm if they continue to operate the franchise. The public would not be confused because the location has already been known as a Big O Tire operation, and if Defendant JDV maintains operation throughout litigation, the public perception remains the status quo as it has for the past two years. Defendants assert that Plaintiff cannot argue that Defendant JDV is no longer part of Big O system, and therefore will confuse the public, when it was Plaintiff's wrongful lack of good cause termination that put Defendant in this position in the first place.

The Tenth Circuit has held that "'[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.'" *Dominion Video*, 356 F.3d at 1260 (quoting *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) (internal quotations omitted)).

Damages caused by trademark infringement " by their very nature are irreparable and not susceptible of adequate measurement for remedy at law." *International Kennel Club of Chicago v. Mighty Star*, 846 F.2d 1079, 1092 (7th Cir. 1988). See also Big O Tires, Inc. v. Bigfoot 4x4, 176 F. Supp. 2d 1216 (D.C. Colo. 2001). Where there is a noncompete agreement, breach is the controlling factor and injunctive relief follows almost as a matter of course. Damage is presumed to be irreparable and the remedy at law is considered inadequate. *Miller v. Kendall*, 541 P.2d 126, 127 (Colo. App. 1975).

I find that Plaintiff has demonstrated irreparable harm if Defendants continue

their trademark infringement, use of the telephone and customer lists, and violation of the covenant not to compete. I find that Plaintiff should not have to place its reputation and standing in the community in the hands of Defendants pending trial when the Defendants are no longer part of the Big O system.

        **C.**      **Balancing the Equities and the Public Interest**

Big O argues that there is harm to Big O if JDV is allowed to continue to operate as an independent tire dealer and the intangible value of having a Big O in the area of Phoenix, Arizona is lost. In addition, there is danger of other franchisees doing what JDV has done, after signing their franchise agreement and learning the Big O system, stop paying royalties and advertising fees and then convert to an independent after building the goodwill of their business under the marks and Big O franchise system.

Defendants argue that the balancing of injuries shows greater harm to Defendant JDV than possible harm to Plaintiff Big O Tires. Defendants assert that there is no harm to the "sanctity of the trademark" because the average consumer would have no idea that JDV and Big O are in a dispute over payment of royalties. Defendants assert that there is no valid argument that Big O would have a greater hardship. Defendants argue that they would have tremendous financial hardship if the franchise were to cease operations, and it would defeat the entire purpose of defending the litigation on the merits because it would essentially put the Vasquez family out of business.

"The hardship of requiring one who willfully infringes another's mark or trade dress to cease that infringement merits little equitable consideration." *Helene Curtis Indus., Inc. v. Church & Dwight Co.* 560 F.2d 1325, 1333 (7th Cir. 1977).

I find, after balancing the equities, that the balance tips in favor of the Plaintiff. I

also find that the public interest favors Plaintiff. The threatened injury to Plaintiff outweighs the harm that the preliminary injunction may cause Defendants. Big O has spent hundreds of thousands of dollars maintaining the sanctity of its trademarks and trade dress. The actions of a rogue franchisee could threaten the very reputation of the franchise. Further, the public may be harmed in purchasing products from a franchisee that does not have the authority to issue warranties in the name of the franchisor or where the overall quality of the terminated franchisee is inferior.

### D. Bond

Defendants assert that Plaintiff should be required to post a bond in the amount of $30,000.00 if the court determines that an injunction should be granted. However, I find bond is not appropriate as the parties have stipulated in Article 27.01 of the Agreement to injunctive relief without bond for post termination violations of the Agreement.

### E. Conclusion

It is hereby

ORDERED that Plaintiff's Motion for Preliminary Injunction, filed May 19, 2008 (docket #2) is **GRANTED**. It is

FURTHER ORDERED that Defendants and their officers, agents, servants, employees and attorneys, and those persons in active concert or participating with JDV who receive actual notice of this order by personal service or otherwise are preliminarily enjoined from engaging in the following acts in Arizona and the United States or in foreign commerce:

      i.      Using the Marks and Trade Dress in the advertising or sale of tires and automotive services;

      ii.      Using in any manner any service mark, trademark, trade name, trade dress, words, numbers, abbreviations, designs, colors, arrangements, collocations or any combination thereof which would imitate, resemble or suggest the Marks or Trade Dress;

      iii.      Otherwise infringing the Marks or Trade Dress;

      iv.      Unfairly competing with Big O, diluting the distinctiveness of Big O's well known Marks and Trade Dress and otherwise injuring Big O's business reputation in any manner;

      v.      Publishing any telephone listings using the Marks and any other name containing words confusingly similar with the Marks. It is

FURTHER ORDERED that Defendants are required to assign Big O JDV's business telephone numbers pending trial. It is

FURTHER ORDERED that Defendants are directed to deliver to Big O all signs, advertising materials, forms, labels, prints, packages, wrappers, receptacles and all other materials in possession of or under the control of Defendants, that use the Marks or Trade Dress. It is

FURTHER ORDERED that Defendants and their officers, agents, servants, employees and attorneys, and those persons in active concert or participating with them who receive actual notice of this order by personal service or otherwise are preliminarily enjoined from directly or indirectly engaging in any business, which offers or sells tires, wheels, shock absorbers automotive services, or other products and services that

12

compete with Big O within a 10 mile radius of 2510 North 75th Avenue, Phoenix, Arizona. It is

FURTHER ORDERED that Defendants are required to return to Big O all manuals and proprietary materials of Big O and to provide Big O with JDV's customer list. It is

FURTHER ORDERED that Defendants are required to file with the Court and serve on Big O within 30 days after the issuance of this injunction, a report in writing and under oath setting forth in detail the manner and form in which they have complied with this order. It is

FURTHER ORDERED that Big O is not required to post any bond.

Dated: October 31, 2008

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge